# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3487

_____

Terrick Terrell Nooner,          *
                                  *

          Appellant,         *
                                  *   Appeal from the United States
     v.                 *   District Court for the
                                  *   Eastern District of Arkansas.

Larry Norris, Director, Arkansas  *
Department of Correction,       *
                                  *

          Appellee.         *

_____

Submitted: June 13, 2007
Filed: August 24, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Terrick Terrell Nooner (Nooner) appeals the district court's denial of his application for a writ of habeas corpus under 28 U.S.C. § 2254. We reverse the dismissal of Nooner's habeas application as a second or successive application and remand for further proceedings.

## I.    BACKGROUND

On March 16, 1993, Nooner shot and killed Scot Stobaugh. A jury convicted Nooner of capital-felony murder with aggravated robbery and theft of property as the underlying felonies, and the jury returned a verdict of death by lethal injection.

Nooner appealed the conviction and sentence. The Supreme Court of Arkansas affirmed. Nooner v. State (Nooner I), 907 S.W.2d 677, 680 (Ark. 1995). Nooner filed a petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37. The trial court denied relief and the Supreme Court of Arkansas affirmed on November 18, 1999. Nooner v. State (Nooner II), 4 S.W.3d 497, 498 (Ark. 1999) (Smith, J.).

Nooner filed an application for a writ of habeas corpus on July 30, 1996, and amended applications on August 14, 1996, and May 17, 2000. The district court dismissed Nooner's application, finding Nooner competent to withdraw his habeas application and granting Nooner's motion to withdraw his habeas application, and alternatively, finding Nooner's habeas claims to be without merit. On appeal, a panel of this court, in a split decision, affirmed the denial of Nooner's application. Nooner v. Norris (Nooner III), 402 F.3d 801, 820 (8th Cir. 2005), cert. denied, 126 S. Ct. 2037 (2006). After the issuance of the panel opinion, Nooner filed a Motion for Order to Allow Access to Appellant for Mental Health Evalulation with this court. The court issued an order providing "[t]he court being without jurisdiction in the absence of a pending proceeding, the motion . . . is denied without prejudice to [Nooner's] right to file a petition for habeas corpus in the district court."

On April 7, 2006, Nooner filed an application for a writ of habeas corpus with the district court using the original case number seeking an order permitting Nooner to undergo a complete mental health evaluation. Larry Norris (Norris), Director of the Arkansas Department of Correction, had not allowed Nooner access to mental health experts to obtain a mental health evaluation. On July 27, 2006, the district court dismissed, without prejudice, Nooner's application on grounds that Nooner's application was a second or successive application for purposes of 28 U.S.C. § 2244(b), which Nooner had filed without the authorization of the circuit court. This appeal followed. We granted a certificate of appealability on two questions: (1) whether Norris's refusal to allow Nooner access to mental health experts for

purposes of a mental health evaluation violated the Constitution, and (2) whether the district court was correct in ruling that Nooner's application was a second or successive application under 28 U.S.C. § 2244(b).

At the time of oral argument, the State of Arkansas had not yet set Nooner's execution date. After oral argument, the State of Arkansas set Nooner's execution date on September 18, 2007. Nooner filed a Motion for Stay of Execution, seeking time to allow this court to decide Nooner's appeal.

## II.   DISCUSSION

Because the second certified question concerns our jurisdiction, we consider it first. E.g., Panetti v. Quarterman, 551 U.S. __, 127 S. Ct. 2842, 2852 (2007); see also Rosado v. Wyman, 397 U.S. 397, 403 n.3 (1970) (noting "a court always has jurisdiction to determine its own jurisdiction"). We review de novo the district court's conclusion Nooner's instant application was a second or successive habeas application. See Williams v. Norris, 461 F.3d 999, 1001 (8th Cir. 2006), petition for cert. filed, __ U.S.L.W. __ (U.S. May 10, 2007) (No. 06-11260).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, limits the availability of habeas relief. See 28 U.S.C. § 2244(b);[1] Fry v. Pliler, 551 U.S. ___, 127 S. Ct. 2321, 2327 (2007). Before filing a

---

[1]Title 28 U.S.C. § 2244(b)(2) creates a gatekeeping mechanism, which provides:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

second or successive application, the applicant must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).

Nooner does not rely on the exceptions set forth in § 2244(b)(2). Nooner instead relies on the Supreme Court's decisions in Stewart v. Martinez-Villareal, 523 U.S. 637, 643 (1998), and Panetti, 127 S. Ct. at 2853. Nooner argues the instant application is not a second or successive application because it does not challenge his conviction and sentence, but rather the application challenges Norris's denial of access to mental health experts in Nooner's effort to develop a claim under Atkins v. Virginia, 536 U.S. 304, 321 (2002) (concluding the Eighth Amendment "places a substantive restriction on the State's power to take the life of a mentally retarded offender," (internal quotation marks omitted)) and Ford v. Wainwright, 477 U.S. 399, 409-10 (1986) (holding "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane").[2]

---

> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

See also Burton v. Stewart, 549 U.S. __, 127 S. Ct. 793, 796 (2007) (concluding a habeas application filed after a previously adjudicated application was a second or successive application, which had not been authorized by the appropriate court of appeals, and thus the district court lacked jurisdiction to entertain it).

[2]Because the parties have assumed an Atkins-based mental retardation claim should be treated the same as a Ford-based incompetency claim, for purposes of this case, we assume, without deciding, the two claims should be treated similarly.

-4-

In Martinez-Villareal, an applicant filed a habeas application alleging, among other things, a Ford-based incompetency claim. Martinez-Villareal, 523 U.S. at 640. The district court dismissed the Ford-based incompetency claim without prejudice, because the state had not yet obtained a warrant for the applicant's execution and the application was premature. Id. at 640, 643. After the state obtained an execution warrant, the applicant sought permission from the court of appeals to file a second or successive application alleging the Ford claim. Id. at 640-41. The Supreme Court held the applicant "was not required to get authorization to file a 'second or successive' application before his Ford claim could be heard" because "[t]here was only one application for habeas relief." Id. at 643-44. The Court concluded the applicant was entitled to a hearing on the merits of his Ford-based incompetency claim, because the state issued a warrant for the applicant's execution and the applicant's claim was "then unquestionably ripe." Id. at 643, 646.

In Panetti, the Supreme Court extended the holding of Martinez-Villareal. Panetti, 127 S. Ct. at 2853. The applicant filed an initial habeas application, however, the application did not include a Ford-based incompetency claim. Id. at 2849. After the state trial court set an execution date, the applicant filed another habeas application containing a Ford claim. Id. The Supreme Court noted it "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." Id. at 2853. The Court observed "Congress did not intend the provisions of AEDPA addressing 'second or successive' [applications] to govern a filing in the unusual posture presented here: a § 2254 application raising a Ford-based incompetency claim filed as soon as that claim is ripe." Id. In conclusion, the Court stated "[t]he statutory bar on 'second or successive' applications does not apply to a Ford claim brought in an application filed when the claim is first ripe." Id. at 2855. After discussing the merits, the Court reversed the denial of habeas relief. Id. at 2863.

In both Martinez-Villareal and Panetti, the Supreme Court held the statutory bar on second or successive applications does not apply to Ford-based incompetency claims filed *after* the state has obtained an execution warrant. Panetti, 127 S. Ct. at 2849, 2853; Martinez-Villareal, 523 U.S. at 640, 643-44. For the limited purpose of the statutory bar on second or successive applications found in § 2244(b)(2), we cannot think of any statutory reason why this holding cannot be extended to Ford-based incompetency and Atkins-based mental retardation claims filed *before* the state has obtained an execution warrant.

Moreover, in both Martinez-Villareal and Panetti, the Supreme Court indicated the setting of an execution date caused the applicants' Ford-based incompetency claims to become ripe. Panetti, 127 S. Ct. at 2852; Martinez-Villareal, 523 U.S. at 643. Here, Nooner filed the habeas application *before* the State of Arkansas had obtained an execution warrant. That Nooner filed the habeas application before the setting of an execution date is irrelevant to the ripeness of Nooner's habeas application because "it is the situation now rather than the situation at the time of the [d]istrict [c]ourt's decision that must govern." Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974); see also Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo., 401 F.3d 930, 932 (8th Cir. 2005).

## III.  CONCLUSION

For the reasons discussed above, we reverse the district court's dismissal of Nooner's habeas application as a second or successive application and remand for further proceedings consistent with this opinion. Because the district court did not reach the merits of the first certified question, we remand for further proceedings so the district court can consider the matter in the first instance. Nooner's Motion for Stay of Execution is dismissed as moot, without prejudice to filing a motion for stay of execution in the district court.

BYE, Circuit Judge, concurring in the result.

I agree the habeas petition Terrick Nooner filed in the district court was not a second or successive petition, and Nooner did not require the authorization of the circuit court before filing the petition in the district court. I therefore concur in the result reached by the Court, but write separately because I do not agree the claim brought in the petition ripened only after Arkansas set an execution date.

The Court characterizes Nooner's claim as an Eighth Amendment claim brought pursuant to Ford v. Wainwright, 477 U.S. 399 (1986), and Atkins v. Virginia, 536 U.S. 304 (2002). A fair reading of Nooner's petition, however, indicates the thrust of his claim is based on the constitutional right-of-access to the courts, a claim which is merely prefatory to his bringing a Ford or Atkins claim. Nooner claimed, as a condition of his confinement, the Arkansas Department of Corrections was denying him access to mental health professionals and such a denial violated his constitutional right of access to the courts by impeding his ability to prepare a future Ford-based incompetency claim or Atkins-based mental retardation claim when his execution date was actually set. I believe a right-of-access claim ripens when the state places a substantial impediment in the way of the future litigation a prisoner seeks to pursue, so long as the prisoner shows the underlying claim itself is colorable. See Christopher v. Harbury, 536 U.S. 403, 413-15 (2002) (discussing the distinction between a right-of-access claim brought to remove a roadblock to future litigation, and the underlying (future) claim itself, and indicating such a claim is viable when the prisoner shows the underlying claim is "nonfrivolous" or "arguable.").

I concur in the result.

_____

-7-