STATE of Arkansas *v.* Ricky Dale NEWMAN

CR 03-1257                                    159 S.W.3d 309

Supreme Court of Arkansas
Opinion delivered April 15, 2004

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for petitioner.

No response.

PER CURIAM. Ricky Dale Newman was convicted in the Crawford County Circuit Court of capital murder and sentenced to death. This court conducted an automatic review of the conviction and sentence, pursuant to Ark. R. App. P.—Crim. 10, and found no reversible error. *See Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003).

Following our mandate, on June 30, 2003, the trial court held a hearing, pursuant to Ark. R. Crim. P. 37.5(b), to consider the appointment of counsel to represent Newman in postconviction proceedings. During this hearing, the trial court advised Newman of the postconviction relief available to him pursuant to Rule 37.5 and that a petition seeking such relief must be filed in the circuit court within ninety days from the date of entry of this order. The trial court also informed Newman of the right to have counsel advise him on his Rule 37.5 rights, and that because he was indigent, an attorney would be appointed at no charge to him. The trial court also informed Newman of his right to appeal the denial of any postconviction relief and to pursue remedies that may be applicable to him pursuant to habeas corpus relief in federal court. The trial court then advised Newman of his right to waive any Rule 37.5 proceedings and that any waiver could impair his ability

to seek habeas relief in federal court. Finally, the trial court advised Newman that his waiver and the willful failure to pursue postconviction relief under Rule 37.5 would result in the death sentence being carried out against him.

Following this advice, the trial court took sworn testimony from Newman. Thereafter, on September 18, 2003, the trial court entered an order containing the following findings of fact:

(a) the Defendant has the capacity and is clearly competent to understand the choice between life and death; and,

(b) the Defendant has the capacity and is clearly competent to knowingly and intelligently waive any and all rights to pursue post-conviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure or habeas corpus relief in federal court; and,

(c) the Defendant has the capacity and is clearly competent to knowingly and intelligently reject his right to have counsel appointed at no charge to him to pursue on his behalf post-conviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure; and,

(d) the Defendant has unequivocally expressed his desire to freely, voluntarily, knowingly, and intelligently reject his right for appointment of an attorney at no cost to him and waive his right to pursue post-conviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure; and,

(e) the Defendant has completely demonstrated he fully understands the legal consequences of (i) his waiver of his right to have an attorney appointed to him, (ii) the waiver of his right to pursue post-conviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure, and [(iii)] the waiver to pursue habeas corpus relief in federal court; and,

(f) the Defendant has unequivocally expressed his desire for his death sentence to be carried out by the State of Arkansas and to die by lethal injection.

On November 4, 2003, the State filed a petition asking this court to lodge the record of the waiver proceedings and review the trial court's order. We denied the State's petition, due to Newman's statement during the waiver hearing that he was under the

influence of his medication, namely Thorazine. *See State v. Newman*, 355 Ark. 265, 132 S.W.3d 759 (2003) (*per curiam*). We thus remanded the matter for the sole purpose of having the trial court order the Arkansas State Hospital to conduct an evaluation of Newman to determine whether he is competent to proceed with the Rule 37.5 hearing and to waive his rights under that rule. *Id.*

Pursuant to our remand, the State Hospital conducted an examination of Newman on January 27, 2004. The examination was conducted by Dr. Charles Mallory, who concluded that Newman did not suffer from any mental disease or defect and that he had the capacity to make a knowing, intelligent, and voluntary waiver of his right to have an attorney advise him on his postconviction rights. Dr. Mallory concluded further that Newman understood the legal consequences of his decision.

Specifically, Dr. Mallory found that Newman understood that the purpose of the evaluation was to help the court determine if he was competent to enter a waiver. He found that Newman was no longer taking psychotropic medication, such as Thorazine, at the time of the examination, that he was fully cooperative during the examination, and that he demonstrated fluent communication skills. Dr. Mallory also found that Newman understood the proceedings that led to his death sentence and the nature and effect of the death penalty. Newman specifically stated: "Death means there are no vital signs, total darkness, non-existence, peace." Newman also told Dr. Mallory that he understood the consequence of waiving his right to appeal his death sentence and his right to have a qualified attorney assist in an appeal of his death sentence. Newman stated that he knew that the consequence of his waiver was "[h]opefully, a quick execution." Newman also told the doctor that he had been given the right to represent himself and that he did not want an attorney now, "because I want to be executed."

Following receipt of Dr. Mallory's report, which was filed on February 17, 2004, the trial court held a second hearing on February 25. Initially, the trial court asked Newman if he understood why another hearing was being held. He responded:

> The last time I was here, I waived rule 37.5, and the Supreme Court found me not competent to do it. And they sent me to have a new mental evaluation. I'm here to waive it, again.

Newman later stated: "Dr. Mallory done an evaluation on me, Sir, and told me I was competent." The State then moved to introduce

Dr. Mallory's report into evidence, and the trial court gave Newman the opportunity to review the report, with the assistance of stand-by counsel Robert Marquette. The trial court then asked Newman if he had any objections to the report, and Newman responded that he did not.

The trial court asked Newman if he agreed with Dr. Mallory's determination of competency, and he responded: "I agree with it a hundred percent." Newman then stated that he was not taking any medication and that he had not been taking any medication at the time of his examination with Dr. Mallory. The trial court then asked Newman whether his decision to waive his Rule 37.5 rights was voluntary. Newman indicated that no one was forcing him or otherwise putting pressure on him to waive his rights. He then stated that he understood that this could be his last hearing in the matter.

Finally, the trial court allowed Newman to make a statement. He said:

> I took full — I take full responsibility for what I have done. And I think final justice should be, must be done for Marie Choulette and her family. I stand before this court and waive rule 37.5. I waive all my rights to a trial. And I respectfully ask for an execution date.

Following his statement, the trial court found that Newman was competent and that he had knowingly and voluntarily waived his postconviction rights under Rule 37.

■ The State now submits the transcript of the February 25, 2004, hearing and Dr. Mallory's report and petitions us to review the record for the purpose of affirming the trial court's findings. Viewing the entirety of the record, including both waiver hearings and the trial court's written findings, we grant the State's petition and hold that the trial court's findings are supported by the record in this matter. *See State v. Roberts*, 354 Ark. 399, 123 S.W.3d 881 (2003) (*per curiam*); *State v. Riggs*, 340 Ark. 652, 12 S.W.3d 634 (2000) (*per curiam*). We thus affirm the trial court's conclusion that Newman knowingly, voluntarily, and intelligently waived his rights to postconviction relief.

Petition granted.